UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                         :

PATRICK TUYIZERE, SUK MAYA RAI,      :
BBT by her parent and natural guardian BIRKHA  :
BOLON, ALI JANAR, CHO CHO WIN, ADO    :
LAR, on behalf of themselves and all others    :
similarly situated,                          :
                                         :     Index No. 15-cv-488 (TJM)(TWD)
            Plaintiffs,         :
                                       :     AMENDED CLASS ACTION
          v.                     :         COMPLAINT
                                       :

UTICA CITY SCHOOL DISTRICT BOARD OF   :
EDUCATION, UTICA CITY SCHOOL         :
DISTRICT, BRUCE J. KARAM, Superintendent of :
Utica City School District, in his official capacity,  :
                                       :
           Defendants.       :
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.     This action challenges the Defendants' policy and practice of excluding limited English proficient ("LEP") immigrants aged 17-20 from Thomas R. Proctor High School ("Proctor High School") in Utica, N.Y.  This action is brought on behalf of six refugees, Patrick Tuyizere, Suk Maya Rai, BBT by her parent and natural guardian Birkha Bolon, Ali JaNar, Cho Cho Win, and Ado Lar, and a class of similarly situated individuals.

2.     Patrick Tuyizere, Suk Maya Rai, BBT by her parent and natural guardian Birkha Bolon, Ali JaNar, Cho Cho Win, and Ado Lar are refugees who fled violence and persecution in their home countries.  Each came to the United States longing for freedom and opportunity, only now to be the subject of national origin discrimination.  They want to go to high school, make American friends, and learn more than just English.  But Defendants Utica City School District Board of Education, Utica City School District, and Superintendent Bruce J. Karam have

excluded them from high school and diverted them instead to alternative programs that provide limited educational instruction.  Their experience is typical among the 17-20 year old refugee population in Utica.

3.      For the last 35 years, Utica has served as a safe haven for refugees fleeing violence and persecution in their home countries.  The refugee population in Utica is large, comprising nearly 1 out of every 6 residents.  Nicknamed "The Second Chance City," in part for the second chance it offers refugees fleeing persecution, Utica has, in many respects, been welcoming of refugees.  The exception: For the last 8 years, Defendants have been excluding LEP immigrants (primarily refugees) over 16 years of age from Proctor High School, the only high school in Utica, and diverting them to alternative education programs.

4.      Under New York law, individuals have the right to attend high school until they turn 21 or earn a high school diploma.  The last compulsory age of education, i.e., the age until which students are required by law to attend school full time, is 16 years old.  While students over 16 may choose to enter into alternative education programs, it must be their choice.  For the last eight years, however, the Defendants have been robbing immigrant students of that choice.  By contrast, upon information and belief, Defendants allow non-immigrant students over 16 to enroll in Proctor High School.

5.      From 2007 until November 2014, the Defendants diverted LEP immigrants aged 17-20 to the "Newcomer Program," an alternative education program for newly arrived immigrants in Utica.  For seven years, the Newcomer Program provided English as a second language ("ESL") instruction to immigrant students, but no content area instruction, such as math, science, and history.  In January 2014, the Newcomer Program began offering high school equivalency classes, commonly known as GED classes, to students who test well on an English

proficiency exam, while those who do not test well remain in classes that teach only English ("ESL-only" classes).

6.    In November 2014, following complaints about the inadequacy of ESL-only instruction for immigrant students aged 17-20, the Oneida-Herkimer-Madison Board of Cooperative Educational Services ("BOCES"), in consultation and coordination with the Defendants, created the Alignment of Pathways and Programs for Learners of English ("APPLE Program"). Located in New Hartford, N.Y., the APPLE Program provides GED classes for LEP immigrants aged 17-18. The Defendants continue to divert LEP immigrants aged 19-20 to the Newcomer Program, excluding them from high school.

7.    A GED program is not, in reality, a substitute for a high school education. Compared to high school, GED instruction in the core subjects of reading, writing, science, history and math, is cursory. Students in GED programs are only taught what is necessary to pass the GED exam. In high school, instruction in the core subjects is more in-depth, students can take advanced courses, and they can take art, music, health and physical education classes. Thus, a high school education is not only more rigorous than a GED program, it is more comprehensive. As a consequence, the high school diploma provides its recipients with more promising employment opportunities than recipients of a GED. Yet, in Utica, LEP immigrants aged 17-20 have been relegated to either ESL-only classes or GED programs, with no option to attend high school. Moreover, the limited educational programs available to these students are not located at Proctor High School, leaving them completely segregated from their non-immigrant peers.

8.    The Defendants have violated and continue to violate the rights of LEP immigrants to equal educational opportunities, to be free of national origin discrimination, and to

attend high school until age 21 under the federal Equal Educational Opportunities Act, Title VI of the Civil Rights Act of 1964, the U.S. and New York Constitutions, and New York law. The named plaintiffs and the class of similarly situated individuals seek a declaration that Defendants' discriminatory policy and practices are unlawful and an injunction to end those practices.

## PARTIES

### I.   The Named Plaintiffs

9.     Patrick Tuyizere is an 18-year-old refugee from the Democratic Republic of the Congo. He is a native Kinyarwanda speaker and is not proficient in the English language. Before coming to the United States, Patrick and his family lived in a refugee camp in Rwanda. Patrick and his family were granted refugee status to come to the United States because they feared violence from the conflict in the Congo. In October 2014, Patrick and his family arrived in Utica, N.Y., where they continue to live. Patrick is a student in the APPLE Program, where he receives ESL instruction and basic instruction in the content area subjects, such as math and science, which are tested on the GED exam. Instruction in the APPLE Program is less rigorous and less comprehensive than instruction at Proctor High School. Patrick will not have the opportunity to earn his high school diploma in the APPLE Program.

10.     Suk Maya Rai is an 18-year-old refugee from Bhutan. She is a native Nepali speaker and is not proficient in the English language. Before coming to the United States, Suk lived in a refugee camp in Nepal. Suk and her family were granted refugee status to come to the United States because they feared persecution if they returned to Bhutan. In February 2014, Suk and her family arrived in Utica, N.Y., where they continue to live. Suk is a student in the

Newcomer Program's ESL-only classes, where she only receives ESL instruction, does not learn content areas subjects, such as science and history, and does not have the opportunity to earn a high school diploma or a GED.

11.     Birkha Bolon is the father of BBT.  He is a plaintiff in this case bringing claims on behalf of BBT, his minor daughter.  BBT is a 17-year-old refugee from Bhutan.  She is a native Nepali speaker and is not proficient in the English language.  Before coming to the United States, BBT lived in a refugee camp in Nepal.  BBT and her family were granted refugee status to come to the United States because they feared persecution if they returned to Bhutan.  In early March 2015, BBT and her family arrived in Utica, N.Y., where they continue to live.  BBT is currently not receiving any education.  The District referred BBT to the GED classes of the Newcomer Program, where she will receive ESL instruction and basic instruction in the content area subjects, such as math and science, which are tested on the GED exam.  Instruction in the Newcomer Program's GED classes is less rigorous and less comprehensive than instruction at Proctor High School.  BBT will not have the opportunity to earn a high school diploma in the Newcomer Program.

12.     Ali JaNar is a 19-year-old refugee from Myanmar (formerly known as Burma). He is a native Burmese speaker and is not proficient in the English language.  Before coming to the United States, Ali lived in a refugee camp in Thailand.  Ali and his family were granted refugee status to come to the United States because they feared the Myanmar military would harm them if they returned to Myanmar.  In January 2013, Ali and his family arrived in Utica, N.Y., where they continue to live.  Ali is a student in the Newcomer Program's ESL-only classes, where he only receives ESL instruction, does not learn content areas subjects, such as science and history, and does not have the opportunity to earn a high school diploma or a GED.

13.     Cho Cho Win is a 19-year-old refugee from Myanmar.  She is a native Burmese speaker and is not proficient in the English language.  Before coming to the United States, Cho Cho lived in a refugee camp in Thailand.  Cho Cho and her family were granted refugee status to come to the United States because they feared the Myanmar military would harm them if they returned to Myanmar.  In June 2013, Cho Cho and her family arrived in Utica, N.Y., where they continue to live.  Cho Cho is a student in the Newcomer Program's ESL only classes, where she does not learn content areas subjects, such as science and history, and does not have the opportunity to earn a high school diploma or a GED.

14.     Ado Lar is an 18-year-old refugee from Myanmar.  He is a native Burmese speaker and is not proficient in the English language.  Before coming to the United States, Ado lived in a refugee camp in Thailand.  Ado and his family were granted refugee status to come to the United States because they feared the Myanmar military would harm them if they returned to Myanmar.  In August 2014, Ado and his family arrived in Utica, N.Y., where they continue to live.  Ado is a student in the Newcomer Program's ESL-only classes, where he only receives ESL instruction, does not learn content areas subjects, such as science and history, and does not have the opportunity to earn a high school diploma or a GED.


## II.     The Defendants

15.     Defendant Utica City School District Board of Education (the "Board") has general control, management and responsibility of the Utica City School District and the public schools within that district, including Proctor High School.  The Board is a recipient of federal financial assistance.  The Board or its designee evaluates enrollment applications for students entering into grades K-12 and decides which students can attend public schools within the

district. The Board is a State actor and, at all relevant times referenced in this complaint, acted under color of State law within the meaning of 42 U.S.C. § 1983.

16.     Defendant Utica City School District is the public school district in and for the City of Utica, N.Y.  The District is a recipient of federal financial assistance.  The District is a State actor and, at all relevant times referenced in this complaint, acted under color of State law as defined by 42 U.S.C. § 1983.

17.     Defendant Bruce J. Karam is the Superintendent of the Utica City School District and as such is charged with the duty to enforce all provisions of law and all rules and regulations relating to the management of the schools, and other educational, social and recreational activities under the direction of the Board.  Superintendent Karam is a State actor and, at all relevant times referenced in this complaint, acted under color of State law within the meaning of 42 U.S.C. § 1983.  Superintendent Karam is sued in his official capacity.

## FACTS

### I.     Plaintiff Patrick Tuyizere

18.     Patrick Tuyizere is an 18-year-old refugee.  He was born in a refugee camp in Rwanda, but he and his family are from the Democratic Republic of the Congo.  His family escaped the decades-old conflict in the Congo and fled to Rwanda.  The conflict began in the 1990s after the ethnic Hutu militia that led the genocide against ethnic Tutsis in Rwanda fled to the Congo and then led raids against the Tutsi-led Rwandan government.  This conflict has claimed over 5.4 million lives, 2.7 million of them children.

19.     Patrick's native language is Kinyarwanda.  He is not proficient in the English language.

20.     He and his family lived in a Rwandan refugee camp for approximately 17 years. In around August 2014 they learned that they would be able to go to the United States.

21.     In approximately August 2014, Patrick and his family moved to Baltimore, Maryland.  When Patrick arrived in Baltimore, he was 17 years old.  The local school district in Baltimore admitted him to high school, and Patrick began 9th grade classes in September 2014. Patrick's relatives struggled to find employment in Baltimore, and, in early October 2014, he and his family moved to Utica, N.Y., where they continue to live.

22.     A church advocate helped Patrick and his family find an apartment and brought them to the Mohawk Valley Resource Center for Refugees ("Refugee Center") to help them get the resources they needed to settle in Utica.  The advocate got a school enrollment application from someone at the Refugee Center who told him he would need to bring the form to the District's offices.

23.     In October 2014, the advocate called the District and spoke with Tammy Rightmier, the assistant to Elizabeth Paul, the District's Administrator of Special Education.  Ms. Paul evaluates enrollment applications and decides which LEP immigrant students can attend Proctor High School.  The advocate explained that he would like to submit enrollment forms for a newly arrived refugee, and Ms. Rightmier said she would get back to him.

24.     After several days passed, the advocate again called the District and spoke with Ms. Rightmier, who told the advocate that he had to bring the enrollment forms to the Refugee Center to give them to an academic coach—a District employee.  The advocate then met with the academic coach to whom he was referred, and the academic coach submitted Patrick's enrollment forms to Ms. Paul in November 2014.

25.     After approximately one week, the advocate asked a church member to follow up on the application by going to the District's offices to see when Patrick would be admitted into Proctor High School.  The church member then spoke with Ms. Paul, and Ms. Paul told her that the District would not admit Patrick into Proctor High School because he was too old.  Instead, the District would place Patrick in the APPLE Program.  Upon information and belief, Ms. Paul placed Patrick in the APPLE Program in compliance with the Defendants' policy of excluding LEP immigrants aged 17-20 from Proctor High School.

26.     Since approximately December 2014, Patrick has been a student in the APPLE Program.  He is not satisfied with the limited education he is receiving in the APPLE Program. Instruction in the APPLE Program is less rigorous and less comprehensive than instruction at Proctor High School.  Patrick wants to become a doctor and feels like he is not learning enough science in his GED classes to prepare him to realize his dream.  He is frustrated with the limited education services available to him in the APPLE Program.  Patrick is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  He wants to attend high school and be in classes with native English speakers.  He wants to earn a high school diploma, so he can work towards his dream of becoming a doctor. He does not understand why he is not allowed to go to high school.

**II.    Plaintiff Suk Maya Rai**

27.     Suk Maya Rai is an 18-year-old refugee.  Suk was born in a refugee camp in Nepal.  She and her family are members of the Lhotshampa ethnic group from Bhutan.  In the 1990s, the Bhutanese military forcibly expelled the Lhotshampa people, including Suk's parents, from Bhutan because the Lhotshampa people refused to give up their language and customs.

28.     Suk's native language is Nepali.  She is not proficient in the English language.

29.     Suk and her family lived in a refugee camp in Nepal for about 17 years.  In 2014, Suk learned that she and her family would have the opportunity to come to the United States.

30.     In February 2014, Suk and her family arrived in Utica, N.Y., where they continue to live.  When Suk arrived in Utica, she was assigned a caseworker by the Refugee Center. Upon information and belief, following the Defendants' directives and policy, the caseworker placed Suk in the Newcomer Program because she is an LEP immigrant, and, at the time, was 17 years old.  After Suk took an English proficiency exam, she was placed in the Newcomer Program's ESL-only classes.

31.     In February 2014, Suk's older brother, who speaks English, asked her caseworker why Suk was not placed in high school.  The caseworker responded that Suk was not eligible for high school.  A couple of months later, Suk's brother asked an academic coach—a District employee—to enroll Suk in high school.  The academic coach responded that the District does not want students like Suk—which her brother understood to mean older LEP immigrants.

32.     Since February 2014, Suk has been a student in the Newcomer Program's ESL-only classes.  She is not satisfied with the limited education she is receiving in the Newcomer Program's ESL-only classes.  She has no opportunity to earn her high school diploma or a GED. In her refugee camp in Nepal, Suk was taught six subjects in school.  In the Newcomer Program's ESL-only classes, she is only taught English.  She is upset that, for over a year, she has only been able to learn English.  Suk is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  She dreams of attending college and becoming a nurse, but she knows she cannot do so without learning

more than just English.  She would like the opportunity to earn a high school diploma to work towards her dreams.

### III.    Plaintiff BBT by her parent and natural guardian Birkha Bolon

33.    Birkha Bolon is the father of BBT.  He is a plaintiff in this case bringing claims on behalf of BBT, his minor daughter.  BBT is a 17-year-old refugee.  She was born in a refugee camp in Nepal.  She and her family are members of the Lhotshampa ethnic group from Bhutan.  In the 1990s, the Bhutanese military forcibly expelled the Lhotshampa people, including BBT's parents and grandparents, from Bhutan because the Lhotshampa people refused to give up their language and customs.

34.    BBT's native language is Nepali.  She is not proficient in the English language.

35.    BBT and her family lived in a refugee camp in Nepal for about 17 years.  In 2015, BBT learned that she and her family would have the opportunity to come to the United States.

36.    On March 6, 2015, BBT and her family arrived in Utica, N.Y., where they continue to live.  When BBT arrived in Utica, she was assigned a caseworker by the Refugee Center.  Upon information and belief, the caseworker collected BBT's information and sent it to the District for enrollment.  Approximately a few weeks later, BBT received a letter from Proctor High School, referring her to the Newcomer Program's GED classes.  BBT then brought the letter to an academic coach—a District employee—to ask why she was not admitted in Proctor High School.  The academic coach told BBT that she was too old to go to high school.  BBT continued to ask questions and the academic coach said he would speak to his boss at the District.  The academic coach then asked BBT for her I-94 form (a U.S. Customs and Border Protection form showing a foreigner's arrival-departure record) and her alien registration

number—which school districts are prohibited from requesting to avoid intimidating undocumented immigrants from enrolling in school.

37.     BBT has not been admitted into Proctor High School.  She will soon be admitted into the GED classes of the Newcomer Program.  But she would like to go to high school. Instruction in the Newcomer Program's GED classes is less rigorous and less comprehensive than instruction at Proctor High School.  BBT is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  BBT's grandparents are disabled, and she would like to become a doctor to help disabled people like her grandparents.  She would like to learn challenging subjects and earn her high school diploma, so she could work towards her dream of becoming a doctor.


**IV.     Plaintiff Ali JaNar**

38.     Ali JaNar is a 19-year-old refugee.  He was born in a refugee camp in Thailand, but he and his family are from Myanmar.  Myanmar is the largest source of refugees in Southeast Asia due to the government's persecution of ethnic minorities.  Before he was born, his family fled Myanmar to escape ethnic persecution by the Myanmar military.

39.     Ali's native language is Burmese.  He is not proficient in the English language.

40.     Ali and his family lived in a refugee camp in Thailand for about 17 years.  The refugee camp was located in the jungles of Thailand.  In 2012, he and his family learned that they would have the opportunity to come to the United States.

41.     On January 17, 2013, he and his family arrived in Utica, N.Y., where they continue to live.  When Ali arrived in Utica, he was assigned a caseworker by the Refugee Center.  Upon information and belief, following the Defendants' directives and policy, the

caseworker placed Ali in the Newcomer Program because he is an LEP immigrant, and, at the time, was 17 years old.  Ali's caseworker told him he was not eligible for high school because he was already 17.  Ali then began attending classes at the Newcomer Program, where he was only taught ESL.  In approximately April or May 2013, Ali and a friend of his, who speaks English and was attending Proctor High School, went to Proctor High School to attempt to get Ali admitted.  Ali and his friend spoke to a school official at Proctor High School who told them that Ali could not attend high school because of his age.

42.     Ali continues to take ESL-only classes at the Newcomer Program.  He is not satisfied with the limited education he is receiving in the Newcomer Program's ESL-only classes.  He has no opportunity to earn his high school diploma or a GED.  He is upset that, for over two years, he has only been able to learn English.  He is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  Ali wants the best chance to succeed in life, and he knows a high school education can give him that chance.

### V.     Plaintiff Cho Cho Win

43.     Cho Cho Win is a 19-year-old refugee.  She was born in a refugee camp in Thailand, but she and her family are from Myanmar.  Before she was born, her family fled Myanmar to escape ethnic persecution by the Myanmar military.

44.     Cho Cho's native language is Burmese.  She is not proficient in the English language.

45.     Cho Cho and her family lived in a refugee camp in Thailand for about 17 years. The refugee camp was located in the jungles of Thailand.  In 2013, Cho Cho learned that she and her family would have the opportunity to come to the United States.

46.     In June 2013, Cho Cho and her family arrived in Utica, N.Y., where they continue to live.  When Cho Cho arrived in Utica, she was assigned a caseworker by the Refugee Center. Upon information and belief, following the Defendants' directives and policy, the caseworker placed Cho Cho in the Newcomer Program's ESL-only classes at the Refugee Center because she is an LEP immigrant, and, at the time, was 17 years old.  The caseworker told Cho Cho that she was not eligible to attend the District's high school because of her age.

47.     Since 2013, Cho Cho has been a student in the Newcomer Program's ESL-only classes.  She is not satisfied with the limited education she is receiving in the Newcomer Program's ESL-only classes.  She is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  She is upset that, for about two years, she has only been able to learn English.  She dreams of attending college and becoming an elementary school teacher, but she cannot earn a high school diploma to work towards her dreams.

VI.     **Plaintiff Ado Lar**

48.     Ado Lar is an 18-year-old refugee.  He was born in a refugee camp in Thailand, but he and his family are from Myanmar.  Before he was born, his family fled Myanmar to escape ethnic persecution by the Myanmar military.

49.     Ado's native language is Burmese. He is not proficient in the English language.

50.     Ado and his family lived in a refugee camp in Thailand for about 17 years.  The refugee camp was located in the jungles of Thailand.  In 2014, Ado learned that he and his family would have the opportunity to come to the United States.

51.     In August 2014, Ado and his family arrived in Utica, N.Y., where they continue to live.  When Ado arrived in Utica, he was assigned a caseworker by the Refugee Center.  Upon information and belief, following the Defendants' directives and policy, the caseworker placed Ado in the Newcomer Program's ESL-only classes at the Refugee Center because he is an LEP immigrant, and, at the time, was 17 years old.  The caseworker told Ado that because he had already turned 17, he was not eligible to attend the District's high school.

52.     Since 2014, Ado has been a student in the Newcomer Program's ESL-only classes.  He is not satisfied with the limited education he is receiving in the Newcomer Program's ESL-only classes.  Ado wants to learn more subjects.  He is unable to take classes at Proctor High School or benefit from any of the high school's instructional services, programs, or activities.  He is upset that, for almost one year, he has only been able to learn English.  He dreams of attending college and becoming an engineer, but he cannot earn a high school diploma to work towards his dream.

## VII.    Background

53.     The stories of Patrick, Suk, BBT, Ali, Cho Cho, and Ado, are typical in Utica, N.Y.  Their stories are just the latest examples of the Defendants' eight-year practice of excluding LEP immigrants aged 17-20 from high school and diverting them to alternative education programs.  While the programs have changed over the years, Defendants' policy and practice of excluding certain immigrants from high school has not.  Defendants continue to

prevent LEP immigrants aged 17-20 from submitting enrollment applications, deny their enrollment requests, and even ignore enrollment requests entirely.

***The Legal Right to Equal Education***

54.     The right to a free public education is rooted in Article 11, § 1 of the New York Constitution. Under New York Education law § 3202(1), all individuals, regardless of their national origin, have the right to attend the high school within their school district until they turn 21 years of age or receive a high school diploma. While the age of compulsory education ends at 16, no one may be precluded from a public school solely because he

55.     or she has passed the compulsory age. Even students who have earned a GED diploma, continue to be entitled to a free high school education until they reach 21 years of age.

56.     Federal and state law mandate that students with limited English proficiency (otherwise known as English Language Learners) are entitled to equal access to all public school programs and services offered by their school district. To ensure their equal access, both federal and state law require school districts to provide LEP students with programs and services designed to overcome language barriers by helping students gain English proficiency while also learning content area subjects, such as math, science, and history.

57.     Students suspected of being limited English proficient must undergo an English language assessment to determine whether, based on State proficiency exams, they are in fact limited English proficient. Under New York Education Law § 3204 and Section 154-1.3 of the Regulations of the Commissioner of the NY State Education Department ("NYSED"), LEP students are entitled to English instruction and grade and age level appropriate instruction in the required subjects, like science, math, and history. Under Section 154-1.3 of the Regulations of

the Commissioner, if there are 20 or more LEP students who speak the same native language, are at same grade level, and are in the same building, those students are entitled to grade and age level appropriate instruction in the required subjects in a bilingual education program.  If there are not enough students for a bilingual education program, LEP students are entitled to grade and age level appropriate instruction in the required subjects in an English as a second language program.  Once placed in either a bilingual program or ESL program, students must undergo an annual English language assessment to determine whether they continue to be limited English proficient.

58.     Under Title III of the Elementary and Secondary Education Act, federal funds are provided to school districts on the condition that school districts use these funds to help LEP students learn English and meet state academic content and achievement standards.  The Board and the District receive Title III funding and other federal funding to provide instructional programs and other services to individuals eligible to attend the public schools within the school district.

59.     The problem of school districts refusing to educate immigrant children is not a new one for New York or for this country.  Congress passed the Equal Educational Opportunities Act in 1978 to protect immigrants, among others, from school districts that were segregating them from non-immigrant students and failing to provide them with adequate instructional services.  The U.S. Department of Justice ("DOJ") and the U.S. Department of Education's Office for Civil Rights regularly issue letters and memos to school districts to remind them of their obligations to provide all children, regardless of their national origin or English proficiency, with equal access to public education.

60.     Moreover, in December 2014, after school districts in New York denied unaccompanied minors (i.e., children immigrating to the U.S. without a parent or guardian) access to public education, the New York Attorney General's office and the NYSED revised Section 100.2(y) of the Regulations of the Commissioner to provide greater procedural protections to children.  Now when students submit enrollment applications to a school district, the Regulations of the Commissioner require the school district to admit the student while the district evaluates the student's enrollment application.  School districts now must also decide whether a child is entitled to attend the schools in its district within three business days after the child's initial application to enroll.

61.     Newcomer schools also are not a new concern in the United States.  In 1990, the U.S. Department of Education's Office for Civil Rights issued guidance as to how a Newcomer school for LEP immigrant students could comply with Title VI.  The Office for Civil Rights found a Newcomer school in California to be in compliance with Title VI because, among other reasons: (i) enrollment in the Newcomer school was voluntary, meaning the school district informed students' parents that students can enroll in their home school or the Newcomer school; (ii) attendance in the Newcomer school was limited to one year, after which students return to their home schools; and (iii) the Newcomer school facilities, courses, and extracurricular activities were comparable to the school district's other schools.  Though the Office for Civil Rights issued this guidance on newcomer schools 25 years ago, since 2007 Defendants have been excluding newly arrived immigrants aged 17-20 from high school.

VIII.    **The Defendants' Policy and Practice of Excluding LEP Immigrants Aged 17-20 from Proctor High School**

62.    Since 2007, LEP immigrants aged 17-20 who have arrived in Utica with hopes of attending high school have instead been excluded.  These immigrants came to the United States for the promise of opportunity for those who study and work hard, but that opportunity has been taken away from them by the Defendants as a result of their discriminatory policy and practice.

63.    Since 2007, Defendants have had a policy and practice of excluding LEP immigrants aged 17-20 from high school and diverting them to either the Newcomer Program or the APPLE Program.  While the details of how LEP immigrant students aged 17-20 are diverted to alternative programs have changed over time, the Defendants' policy of diverting them away from high school has not, even though such students have a right to attend Proctor High School under New York law, and a right, under federal and state law, to educational opportunities equal to those available to their non-immigrant peers.

64.    In approximately 2007, Superintendent Karam, who at the time held the position of Director of Secondary Education for the District, created the Newcomer Program.  Superintendent Karam directed District employees to enroll LEP immigrants aged 17-20 in the Newcomer Program rather than Proctor High School.

65.    From 2007 to 2013, the District managed the Newcomer Program.  It provided two ESL teachers, textbooks, security and other resources for students in the program.  Students in the Newcomer Program were physically separated from their non-immigrant peers at Proctor High School.  The Newcomer Program was first located in the District's administrative building, and, later, it was moved into classrooms at the Westminster Presbyterian Church.  The two teachers in the program only taught students English as a second language.  There was no formal curriculum.

19

66.     When they operated the Newcomer Program, the Defendants did not test LEP immigrant students aged 17-20 to determine their level of English proficiency before placing them in the Newcomer Program.  Instead, Defendants automatically placed such students in the Newcomer Program and excluded them from Proctor High School.  None of the students had the option to transfer from the Newcomer Program into high school, even if their English proficiency improved.

***Alternative Programs Change, But Defendants' Discriminatory Practice Stays the Same***

67.     In 2013, the Defendants disclaimed responsibility for the Newcomer Program. They transferred the Newcomer Program's ESL teachers to elementary schools operated by the District and stopped providing any instructional services to students in the Newcomer Program, leaving approximately 60 students to fend for themselves.  The Defendants did not offer students in the Newcomer Program the option to transfer to Proctor High School.

68.     Once the Defendants abandoned the Newcomer Program, the Refugee Center took over.  It has operated the Newcomer Program continuously since then.  Ultimately, the Refugee Center relocated the Newcomer Program into its building at 309 Genesee Street in Utica, nearly two miles away from Proctor High School.

69.     Due to its limited resources, the Refugee Center provides for only one teacher to teach approximately 30 students in the Newcomer Program's ESL-only class.  The Refugee Center relies on private donations for textbooks and other supplies for students in the Newcomer Program.  The Refugee Center is unable to provide students with either breakfast or lunch, which are provided to financially eligible students at Proctor High School.  Sometimes volunteers donate rice to feed Newcomer students.  But, mostly, students who do not bring lunch from

home go without lunch for the school day.  The District provides no funding or resources for students in the Newcomer Program's ESL-only class at the Refugee Center.

70.     Students in the Newcomer Program's ESL-only class cannot earn a high school diploma or GED diploma as part of the program.  They have no regular contact with non-immigrant students.  They are placed solely with other refugee students who are limited English proficient.

71.     In approximately January 2014, the Madison-Oneida BOCES, the Mohawk Valley Community College ("MVCC") and the Refugee Center began an off-shoot of the Newcomer Program to provide GED classes to certain refugee and immigrant students between ages 17-20 who tested well on an English proficiency exam.  In these classes, students are provided with ESL instruction in the morning and instruction in content areas, such as math and science, in the afternoon to prepare students for the GED exam.  MVCC provides for one ESL teacher and Madison-Oneida BOCES provides a teacher for content area instruction.

72.     Defendants do not operate or oversee the GED off-shoot of the Newcomer Program.  The program's current location, the Veterans Outreach Center, is located two miles away from Proctor High School. Students enrolled in the GED off-shoot program have no chance to obtain a high school diploma and do not have the option to enroll in Proctor High School.

73.     In approximately November 2014, following complaints about the inadequacy of ESL-only instruction at the Newcomer Program, the Oneida-Herkimer-Madison BOCES, in consultation and coordination with the Utica City School District, created the APPLE Program. The APPLE Program is a GED program that admits immigrant students who are age 17 and 18. Students enrolled in the APPLE Program cannot earn a high school diploma.  The District buses

students from Utica to the BOCES Middle Settlement Road Campus in New Hartford, New York, approximately five miles from Proctor High School, to take part in the APPLE Program. Students in the APPLE Program do not have the option to enroll in Proctor High School.

***Defendants' Current Enrollment Policy and Practice Divert LEP Immigrants Away from Proctor High School***

74.     Since 2007, the Defendants have continuously maintained a policy and practice of excluding LEP immigrant students aged 17-20 from Proctor High School.  Elizabeth Paul is the Administrator for Special Education for the District, and, upon information and belief, she is either the Board's designee who evaluates enrollment applications for students who require specialized instruction and wish to enter high school or has been delegated that authority by the Board's designee.  From 2014-present, Ms. Paul has been enforcing the Defendants' policy of excluding LEP immigrants aged 17-20 from Proctor High School.

75.     When refugees first arrive in Utica, they typically seek services at the Refugee Center.  In 2013, the District placed bilingual academic coaches at the Refugee Center. Academic coaches are employees of the District who take their direction from Ms. Paul.  One of the roles of the academic coach is to ensure appropriate class and grade-level school placements. Academic coaches help refugee students subject to compulsory education (those 16 and younger) complete the necessary enrollment paperwork for public school and submit that paperwork to Ms. Paul.

76.     Upon information and belief, Ms. Paul received instructions from Superintendent Karam to not enroll LEP immigrants aged 17-20 in Proctor High School and to communicate this instruction to other District employees, including academic coaches, and to caseworkers at the Refugee Center.

22

77.     Ms. Paul and others at the District directed the academic coaches placed at the Refugee Center to not submit enrollment applications for refugee students aged 17-20.  Upon information and belief, Ms. Paul occasionally directed the academic coaches and others at the Refugee Center to not submit enrollment applications for refugees who were 16 but would turn 17 within the school year.  Ms. Paul and others at the District instructed the academic coaches to instead refer these students to the Newcomer Program or the APPLE Program.

78.     At times, rather than refer refugees to academic coaches for enrollment in school, caseworkers would submit enrollment applications to Ms. Paul.  Upon information and belief, Ms. Paul and others at the District directed that caseworkers not submit enrollment applications for refugee students aged 17-20 and that they, instead, refer them to the Newcomer Program or the APPLE Program.

79.     For those LEP immigrants aged 17-20 for whom the academic coaches or caseworkers submitted enrollment applications, Ms. Paul has either directed the academic coaches to refer the student to the Newcomer Program or the APPLE Program, or Ms. Paul has ignored their enrollment applications.

80.     When refugees go directly to the District's administrative offices to request enrollment in high school, District officials ask the refugees whether they are a native English speaker.  When refugees respond that they are not native English speakers, District officials direct them to go to the Refugee Center to submit enrollment applications.  At the Refugee Center, the District's academic coaches, who are District employees, and, at times, the Refugee Center's caseworkers then refer these refugees to the Newcomer Program or the APPLE Program in accordance with Defendants' policy of excluding LEP immigrants aged 17-20 from Proctor High School.

23

*Plaintiffs' Barriers to Admission to Proctor High School Are Not Unique*

81.     In recent years, in accordance with the Defendants' policy and practice, dozens, if not hundreds, of LEP immigrant students aged 17-20 have been excluded from Proctor High School.  Plaintiffs' experiences of being excluded from Proctor High School and diverted to alternative programs are not unique.

82.     A recent example involving two refugees from Myanmar who are members of Karen ethnic group is illustrative.  Upon information and belief, following the Defendants' directives and policy, a Refugee Center caseworker registered them at the Newcomer Program and did not enroll them in Proctor High School because they are LEP immigrants and both 19 years old in 2015.

83.     In February 2015, the two refugees told a Karen advocate who volunteers at the Newcomer Program that they would like to go to high school and they asked for the advocate's help.  The advocate agreed to help them.

84.     On approximately February 17, 2015, the advocate called the office of Elizabeth Paul to initiate the enrollment application process.  Ms. Paul was unavailable, so the advocate spoke to her assistant, Tammy Rightmier.  The advocate asked Ms. Rightmier to enroll the two Karen students in high school.  Ms. Rightmier asked the advocate whether the students spoke English as a second language, to which the advocate said yes.  Ms. Rightmier then directed the advocate to speak with the District's academic coaches at the Refugee Center.

85.     The advocate then asked an academic coach—a District employee—to help the students submit enrollment applications because they wanted to go to high school.  The academic coach responded that she could not submit applications for the Karen refugees because they were over the age of 18.  The academic coach then directed the advocate back to Ms. Paul's office.

86.     The advocate next called Ms. Paul's office and spoke with Ms. Rightmier again. The advocate explained that the academic coach would not submit enrollment applications for the Karen refugees.  She then asked Ms. Rightmier to enroll both students in high school.  Ms. Rightmier asked for the advocate's contact information and promised to get back to her soon.

87.     After a week had passed without any calls from Ms. Rightmier, the advocate called Ms. Paul's office again and spoke with Ms. Rightmier, who directed her to the Refugee Center.  When the advocate called the main admission's office and asked for a meeting so she could enroll the Karen refugees, she was told to go to the Refugee Center to speak with an academic coach.

88.     The next day, the advocate and the Karen refugees met with an academic coach— a District employee—at the Refugee Center, and they asked the academic coach to submit enrollment applications for the refugees.  The academic coach said he could not do so because of their age and directed them again to Ms. Paul.

89.     That same day, the advocate went to the District's headquarters with both Karen refugees.  The advocate asked to see Ms. Paul, but Ms. Rightmier came to see her instead in the lobby of the building.  Ms. Rightmier again told the advocate that the Karen refugees could not fill out enrollment forms at the District's offices and that it was the Refugee Center's job to submit enrollment applications.  Ms. Rightmier promised to call an academic coach at the Refugee Center after their meeting to ask her to submit enrollment forms for the Karen refugees.

90.     Later that day, the advocate went to see the academic coach whom Ms. Rightmier promised to call.  But the academic coach did not receive a call from Ms. Rightmier.  The academic coach suggested that the advocate ask the refugees' caseworker at the Refugee Center

to register the students for high school.  But the caseworker again told the advocate that she could not submit enrollment forms for the students because of their age.

91.     The advocate then obtained enrollment applications from the caseworker.  The Karen refugees completed them.

92.     On March 12, the advocate went to the District's offices and handed the enrollment applications to Ms. Rightmier.  The advocate asked Ms. Rightmier to enroll the students in school, and she asked for Ms. Rightmier's email address so she could follow up.  Ms. Rightmier said she would let the advocate know the District's decision soon.

93.     After a week passed without a response, one month after the advocate first requested enrollment for the students, the advocate emailed Ms. Rightmier and again asked that the students be enrolled into Proctor High School.  The advocate received no substantive response to additional emails inquiring on the status of the applications.

94.     On April 13, an academic coach—a District employee—met with one of the Karen refugees and explained why the APPLE Program is better for her than high school.  The Karen refugee insisted on going to high school.

95.     On April 14, Ms. Rightmier emailed the advocate and told her that both Karen refugees could go to high school beginning on April 20—two months after the advocate first requested their enrollment.

96.     Unlike most other immigrants aged 17-20, the Karen refugees had a dogged advocate who insisted that they be admitted into high school.  Unlike their non-immigrant peers, they needed a dogged advocate to be admitted into high school.

97.     The Karen refugees are among a small number of LEP immigrant students aged 17-20 who have gained admission to Proctor High School only because they had a lawyer or

26

other advocate to insist upon their admission.  When lawyers write to the District and demand, under the threat of litigation, that their clients be admitted into Proctor High School, Defendants often admit them.  Other non-lawyer advocates have to be unrelenting in their efforts to get LEP immigrants aged 17-20 admitted.

### The Defendants' Policy and Practice of Diverting LEP Immigrant Students Aged 17-20 from Proctor High School Is Discriminatory

98.     Defendants expressly consider the native language and English proficiency level of students aged 17-20 who seek enrollment in Proctor High School.  While LEP immigrant students aged 17-20 are excluded from Proctor High School, in contrast, upon information and belief, Defendants allow non-immigrant students aged 17-20 to attend Proctor High School if they request enrollment.  Defendants thus treat students seeking enrollment in Proctor High School differently on the basis of national origin.

99.     Defendants' discriminatory treatment of immigrant students on the basis of national origin extends beyond Proctor High School.  Defendants also exclude immigrants from the District's GED program.  Indeed, the teacher for the District's GED program, Joseph Mootz, has said that he will not take refugee or immigrant students in the District's GED class and he takes his orders from Superintendent Karam, a defendant in this action, who is responsible for overseeing enrollment policies for the Utica schools.   Upon information and belief, Superintendent Karam instructed Mr. Mootz to not accept refugees in the District's GED classes. Mr. Mootz has also said that Utica should just send all the refugees back to their home countries.

100.    As a result of the Defendants' policy and practice of diverting LEP immigrant students aged 17-20 from Proctor High School, none of the students enrolled in the Newcomer Program or the APPLE Program has access to the instructional programs, services, physical

education programs, support services, and extra-curricular activities provided by Proctor High School. They are physically segregated from Proctor High School students and have no regular contact with English-speaking students. They are placed solely with other immigrant students who are limited English proficient.

101.    The educational opportunities available to students in the Newcomer Program and the APPLE Program are not equivalent to those available to non-immigrant and non-LEP students at Proctor High School. Students enrolled in the Newcomer Program and APPLE Program have little or no access to instruction on content areas such as math, science, and history, unlike their non-immigrant peers at Proctor High School. They also have no access to advanced courses and classes in art, music, health, and physical education.

## CLASS ACTION ALLEGATIONS

102.    Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all LEP immigrants aged 17-20 who are eligible to attend public high school in Utica, N.Y. and who are, were, or will be excluded from public school because of Defendants' discriminatory enrollment policy.

103.    All four requirements of Rule 23(a) are satisfied:

(a)    *Numerosity*: Joinder of all class members is impracticable because of the size of the class. There are approximately 55 LEP immigrant students aged 17-20 enrolled in the Newcomer Program and APPLE Program who have been unlawfully excluded from Proctor High School.

(b)    *Commonality*: There are questions of law and fact common to all members of the class, including, but not limited to, whether the Defendants discriminate against LEP immigrants aged 17-20 by excluding them from high school and diverting them to alternative education programs.

(c)    *Typicality*: The claims of the named Plaintiffs are typical of those of the class. The named Plaintiffs, like all class members, allege that the Defendants have deprived them of their right to a high school education by excluding them from Proctor High School and

28

by diverting them to alternative education programs, and that Defendants' policy is discriminatory.  All class members will benefit from an end to this discriminatory policy.

    (d) *Adequacy of Representation*: The named Plaintiffs and class counsel will fairly and adequately represent the interests of the class.  The named Plaintiffs are committed to obtaining declaratory and injunctive relief that will benefit the entire class by ending the Defendants' discriminatory practice towards LEP immigrants aged 17-20, and their interests in this matter are not antagonistic to other class members.  Class counsel have many years of combined experience in complex civil litigation, civil rights and class action litigation.

104. Class-wide declaratory and injunctive relief are appropriate under Rule 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the class as a whole.

## JURISDICTION AND VENUE

105. This action arises under the Constitution and laws of the United States, including 20 U.S.C. § 1703, 42 U.S.C. § 2000d *et seq.*, and 42 U.S.C. § 1983.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  This Court may exercise supplemental jurisdiction over the claims based on New York law pursuant to 28 U.S.C. § 1367.

106. This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202.  This Court may also grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.  This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

107. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b).  All the events described in this complaint occurred in the Northern District of New York.

## CLAIMS FOR RELIEF

### First Cause Of Action

#### Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the Defendant Utica City School District Board of Education and Defendant Utica City School District for Violation of the Equal Educational Opportunities Act

108.     The named Plaintiffs, on behalf of themselves and all others similarly situated, restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

109.     The Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1703, provides in relevant part:

No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by:

(a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools;

(f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

110.     Through their actions and inactions, as set forth above, the Board and the District deliberately segregated plaintiffs because of their national origin.

111.     Through their actions and inactions, as set forth above, the Board and the District failed to take appropriate action on behalf of LEP immigrants aged 17-20 to overcome language barriers that interfere with and impede their equal participation in the District's instructional programs.  The conduct of the Board and the District, as set forth above, has a discriminatory effect based on national origin and, as a result, has violated and continues to violate the rights of plaintiffs under the Equal Educational Opportunities Act.

112.     As a result of the Board and the District's violations, plaintiffs have suffered and will continue to suffer from the lack of a high school education, inferior instructional programs

and services, and loss of educational and employment opportunities.  The named Plaintiffs, on behalf of themselves and others similarly situated, seek declaratory and injunctive relief remedying these ongoing and systemic violations.

## Second Cause of Action

### Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the Defendant Utica City School District Board of Education and Defendant Utica City School District for Violation of Title VI of the Civil Rights Act of 1964

113.    The named Plaintiffs, on behalf of themselves and all others similarly situated, restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

114.    Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., provides that no person in the United States shall, on the basis of race, color or national origin, be denied the benefits of or be subject to discrimination under any program receiving federal funding.

115.    As recipients of federal funding, the Board and the District were prohibited from discriminating against Plaintiffs by excluding them from instructional services, failing to provide them with instructional services, or providing them with inferior services on the basis of their national origin.

116.    Through their actions and inactions, as set forth above, the Board and the District discriminated against plaintiffs on account of their national origin.

117.    As a result of the Board and District's violations, plaintiffs have and will continue to suffer from the lack of a high school education, inferior instructional programs and services, and loss of educational and employment opportunities.  The named Plaintiffs, on behalf of

themselves and others similarly situated, seek declaratory and injunctive relief remedying these ongoing systemic violations.

## **Third Cause of Action**

### Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the Defendants for Violation of the New York Education Law

118.    The named Plaintiffs, on behalf of themselves and all others similarly situated, restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

119.    New York  Education Law § 3202(1) provides that any person over five and under twenty-one years of age, who lives in a school district and has not received a high school diploma, is entitled to attend public school in the district.

120.    Through their actions and inactions, as set forth above, Defendants have violated plaintiffs' rights under NY Education Law § 3202(1).

121.    As a result of the Defendants' violations, plaintiffs have suffered and will continue to suffer from the lack of a high school education, inferior instructional programs and services, and loss of educational and employment opportunities.  The named Plaintiffs, on behalf of themselves and others similarly situated, seek declaratory and injunctive relief remedying these ongoing and systemic violations.

**Fourth Cause of Action**

Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the
Defendants for Violation of the Fourteenth Amendment Equal Protection Clause

122.    The named Plaintiffs, on behalf of themselves and all others similarly situated,
restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of
this complaint as fully set forth herein.

123.    Through their actions and inactions, as set forth above, the Defendants violated
the Fourteenth Amendment Equal Protection rights of the named Plaintiffs and all others
similarly situated by discriminating against them because of their national origin.

124.    As a result of Defendant's violations, Plaintiffs have suffered and will continue to
suffer from the lack of a high school education, inferior instructional programs and services, and
loss of educational and employment opportunities.   The named Plaintiffs, on behalf of
themselves and others similarly situated, seek declaratory and injunctive relief, under 42 U.S.C.
§ 1983, remedying these ongoing systemic constitutional violations.


**Fifth Cause of Action**

Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the
Defendant Utica City School District Board of Education for Violation of the Fourteenth
Amendment Due Process Clause

125.    The named Plaintiffs, on behalf of themselves and all others similarly situated,
restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of
this complaint as fully set forth herein.

126.    Through its actions and inactions, as set forth above, the Board or its designee
violated the Fourteenth Amendment Due Process rights of the named Plaintiffs and all others

similarly situated by denying them their right to attend high school without providing them with notice or an opportunity to be heard.

127.    As a result of Defendants' violations, Plaintiffs have suffered and will continue to suffer from the lack of a high school education, inferior instructional programs and services, and loss of educational and employment opportunities.   The named Plaintiffs, on behalf of themselves and others similarly situated, seek declaratory and injunctive relief, under 42 U.S.C. § 1983, remedying these ongoing systemic constitutional violations.

### Sixth Cause of Action

<u>Declaratory and Injunctive Relief for the Named Plaintiffs and the Class Against the Defendant Utica City School District Board of Education for Violation of the New York State Constitution's Due Process Clause</u>

128.    The named Plaintiffs, on behalf of themselves and all others similarly situated, restate and re-allege and incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

129.    Through its actions and inactions, as set forth above, the Board or its designee violated the New York State Due Process rights of the named Plaintiffs and all others similarly situated by denying them their right to attend high school without providing them with notice or an opportunity to be heard.

130.    As a result of Defendant's violations, Plaintiffs have suffered and will continue to suffer from the lack of a high school education, inferior instructional programs and services, loss of educational and employment opportunities.   The named Plaintiffs, on behalf of themselves and others similarly situated, seek declaratory and injunctive relief remedying these ongoing systemic constitutional violations.

## REQUESTS FOR RELIEF

WHEREFORE the plaintiffs respectfully request that the Court:

a.  Assume jurisdiction over this matter;

b.  Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2);

c.  Declare that Defendants' acts and omissions violated the named Plaintiffs and class members' rights under the Equal Educational Opportunities Act;

d.  Declare that the Defendants' acts and omissions violated the named Plaintiffs and class members' rights under Section 601 of Title VI of the Civil Rights Act of 1964;

e.  Declare that Defendants' acts and omissions violated the named Plaintiffs and class members' right to a high school education under New York Education Law;

f.  Declare that the Defendants' acts and omissions violated the named Plaintiffs and class members' rights under the Fourteenth Amendment Equal Protection Clause;

g.  Declare that Defendant's acts and omissions violated the named Plaintiffs and class members' rights under the Fourteenth Amendment Due Process Clause;

h.  Declare that Defendant's acts and omissions violated the named Plaintiffs and class members' rights under the New York State Constitution's Due Process Clause;

i.  Enter permanent injunctive relief, in the form of:

   a.  an order requiring Defendants to enroll LEP immigrants aged 17-20 in Proctor High School if the immigrants want to go to high school, are residents of the Utica City School District, and have not yet turned 21 years old;

   b.  an order requiring Defendants to adopt policies, procedures, and training ensuring that Defendants end their ongoing violations of the Equal Educational Opportunities Act, Title VI; the U.S. and New York Constitutions, and state law;

   c.  an order requiring Defendants to provide compensatory education to plaintiffs to remedy the educational deficits caused by Defendants' policy and practice of excluding plaintiffs from Proctor High School;

j.  Award the plaintiffs reasonable attorney's fees and costs under 42 U.S.C. 1988; and

k.  Grant any other relief the Court deems necessary and proper.

Dated: April 27, 2015
      New York, New York

Respectfully submitted,

PHILIP DESGRANGES (Bar No. 519350)
ALEXIS KARTERON (Bar No. 518840)
ARTHUR EISENBERG (Bar No. 101576)
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
pdesgranges@nyclu.org
akarteron@nyclu.org
aeisenberg@nyclu.org

SUSAN M. YOUNG (Bar No. 102862)
SAMUEL C. YOUNG (Bar No. 508916)
LEGAL SERVICES OF CENTRAL NEW YORK
472 S. Salina Street
Syracuse, New York 13202
Tel: (315) 703-6500
syoung@lscny.org
samyoung@lscny.org

*Attorneys for Plaintiffs*